IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. LAWRENCE WALNER, and LAWRENCE WALNER, individually, | )<br>)<br>)<br>) Case No. 08 C 2642 |
| Plaintiffs, | ) Judge Virginia M. Kendall |
| v. | ) |
| NORTHSHORE UNIVERSITY HEALTHSYSTEM f/k/a EVANSTON NORTHWESTERN HEALTH CARE, DR. TIMOTHY VOTAPKA and JOHN DOES (1-10), | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs United States of America, ex rel. Lawrence Walner, and Lawrence Walner, individually (collectively "Walner") filed suit against Defendants NorthShore University Health System ("NorthShore"), Dr. Timothy Votapka ("Votapka"), and John Does 1-10 ("John Does") (collectively "Defendants") alleging violations of the False Claims Act ("FCA") (Counts I, II, and III) and common law fraud (Count IV), and seeking injunctive relief (Count V). Defendants move the Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Walner's Complaint for failure to state a claim upon which relief can be granted. For the reasons stated, Defendants' Motion to Dismiss is granted. Counts I, II, III, and V of Walner's Complaint are dismissed without prejudice and Count IV is dismissed with prejudice.

**BACKGROUND/FACTS[1]**

---

[1] In his response to Defendants' Motion to Dismiss, Walner set forth additional facts to support his claims and attached various exhibits, including his own declaration. Walner's response and attached exhibits, however, are not part of the pleadings and are therefore outside the scope of the Court's 12(b)(6) analysis. *See Alioto v. Marshall*

The following facts are taken from the allegations in Walner's Third Amended Complaint, which are accepted as true for purposes of deciding this motion to dismiss. Walner is one of NorthShore's patients and is also a Medicare recipient. Am. Compl ¶ 2.[2] NorthShore is a health system affiliated with Northwestern University that operates three hospitals in the Chicago area. Am. Compl. ¶ 9. It receives payment from the United States through the federal Medicare and Medicaid programs. Am. Compl. ¶ 11.

Shortly before undergoing heart surgery for replacement of an aortic valve in January 2004, Walner was informed that a recent angiogram test revealed that he had two 20% blockages in his arteries. Am. Compl .¶ 24. Walner's surgeon told him that he would not ordinarily perform a bypass on such a limited blockage, but because Walner was already undergoing heart surgery his surgeon recommended that the bypasses be performed. Am. Compl. ¶ 25. Walner received a copy of Medicare's payment for the bypasses within several months. Am. Compl. ¶ 30.

When applying for life insurance coverage in 2007, Walner discovered that his medical history included a record of 70% blockages in his arteries. Am. Compl. ¶ 32. Subsequently, Walner sought the advice of another cardiologist. Am. Compl. ¶ 36. After receiving the film of his January 2004 angiogram, the cardiologist informed Walner that his arteries showed a 20% blockage, not a 70% blockage. Am. Compl. ¶ 37. Walner asserts that at the time his surgeon recommended the bypasses be performed, the surgeon expected to be paid through Medicare. Am. Compl. ¶ 26. Because the surgeon knew that Medicare would not deem bypasses on a 20% blockage medically

---

*Field's & Co.*, 77 F.3d 934, 936 (7th Cir. 1996).

[2]Citations to Walner's Third Amended Complaint are abbreviated as "Am. Compl. ¶ __."

necessary and therefore would not cover payment, the surgeon and hospital representative falsely recorded a 70% blockage. Am. Compl. ¶ 27.

Walner originally filed this action under seal on May 8, 2008, and then filed an amended complaint on July 28, 2008. In accordance with the FCA's *qui tam* provision, 31 U.S.C. § 3730, the case remained under seal to give the U.S. Attorney's Office time to decide whether to intervene. Ultimately, the government declined to intervene and Walner proceeded on his own as a relator. *See* D.E. 8, Notice of Election to Decline Intervention. On October 31, 2008, Walner filed a Second Amended Complaint which the Defendants moved to dismiss. In response to Defendants' motion to dismiss, Walner filed a Third Amended Complaint. Defendants now move the Court to dismiss Walner's Third Amended Complaint pursuant Fed. R. Civ. P. 12(b)(6).

## STANDARD OF REVIEW

When considering a motion to dismiss, a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a complaint must contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 1929 (2007). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

## DISCUSSION

**I. FCA Claims (Counts I, II, and III)**

Defendants move this Court to dismiss Walner's FCA claims because he has failed to plead them with the particularity required by Fed. R. Civ. P. 9(b). The FCA is an anti-fraud statute and claims brought pursuant to the FCA are subject to the heightened pleading requirements of Rule 9(b). *See United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). Rule 9(b) requires that "[i]n all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b)'s heightened pleading standard requires a plaintiff to do more than the usual investigation before filing his complaint. *See Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). Rule 9(b) "requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsive and supported . . . ." *Id*. A complaint for fraud must specify the "who, what, when, where and how" of the alleged fraud. *See United States ex rel Lusby v. Rolls-Royce Corp.*, No. 08-3593, 2009 WL 1855179 at *4 (7th Cir. June 30, 2009) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Simple conclusory allegations of fraud do not suffice. *See Gross*, 415 F.3d at 604-05. The FCA imposes civil liability for a series of actions under § 3729(a).[3] Here, the three applicable sections are § 3729(a)(3) (Count I), § 3729(a)(1) (Count II), and § 3729(a)(1)(B)

---

[3] Walner alleges three violations of the FCA pursuant to 31 U.S.C. § 3729(a)(3), 31 U.S.C. § 3729(a)(1), and 31 U.S.C. § 3729(a)(2). An amendment, effective May 20, 2009, altered the language of these sub-sections and re-designated them as § 3729(a)(1)(C), § 3729(a)(1)(A), and § 3729(a)(1)(B), respectively. *See* Fraud Enforcement and Recovery Act of 2009, Pub.L. No.. 111-21, 123 Stat. 1617, 1621 (2009). The amendment provides that most of the changes specified apply only to conduct that occurred after May 20, 2009. Pub.L. 111-21, § 4(f). There is, however, an exception for claims arising under § 3729(a)(1)(B) (formerly § 3729(a)(2)). *See Lusby*, 2009 WL 1855170 at *6 (acknowledging the exception Congress made for applying § 3729(a)(1)(B) to claims brought before May 20, 2009); *but see United States v. Aguillon*, No. 08-789-SLR, 2009 WL 1789894, at *6-7 (D. Del. June 24, 2009) (refusing to apply the amended version of § 3729(a)(1)(B) to a claim brought after June 7, 2008). Section 4(f)(1)of the Fraud Enforcement and Recovery Act of 2009 states that § 3729(a)(1)(B) applies to all claims pending on and after June 7, 2008. *See* Fraud Enforcement and Recovery Act of 2009, Pub.L. No. 111-21, § 4(f)(1), 123 Stat. 1617, 1625 (2009). Because the alleged conduct here occurred before May 20, 2009, this Court will apply the older versions of § 3729(a)(3) and § 3729(a)(1) for Counts I and II; however, because Walner's claim was pending on June 7, 2008, the Court will apply the new version of § 3729(a)(1)(B) for Count III.

4

(Count III). Under § 3729(a)(3), civil liability is imposed on any person who *conspires* to defraud the government by getting a false or fraudulent claim allowed or paid. *See* 31 U.S.C. § 3729(a)(3). To state a claim under Section 3729(a)(3), Walner must allege two elements: 1) that the Defendants had an agreement, combination, or conspiracy to defraud the government by getting a false or fraudulent claim allowed or paid; and 2) that the Defendants did so for the purpose of obtaining or aiding to obtain payment from the government or approval of a claim against the government. *See* 31 U.S.C. 3729(a)(3); *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 544-45 (1943); *United States v. Rogan*, 459 F. Supp. 2d 692, 718 (N.D. Ill. 2006). Under § 3729(a)(1), civil liability is imposed on any person who knowingly presents a false or fraudulent claim to the government for payment or approval. *See* 31 U.S.C. § 3729(a)(1). To state a claim under this section, Walner must allege three elements: 1) a false or fraudulent claim; 2) was presented, or caused to be presented, by the Defendants to the United States for payment or approval; 3) with the knowledge that the claim was false. *See United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740-41 (7th Cir. 2007), *overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, No. 07-4036, 2009 WL 1885500 (7th Cir. July 02, 2009). Under § 3729(a)(1)(B), civil liability is imposed on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to the false or fraudulent claim. *See* 31 U.S.C.A. § 3729(a)(1)(B). To state a claim under this section, Walner must allege that: 1) the Defendants made a statement in order to receive

payment from the government; 2) the statement was false, and 3) the Defendants knew it was false.[4] *See Fowler*, 496 F.3d at 741.

Here, Walner alleges that the Defendants violated the FCA by submitting false records to Medicare for payment. In support of his allegations, Walner alleges that his surgeon informed him that he had two 20% blockages but that his medical records document 70% blockages. Am. Compl. ¶ 27. Walner asserts that his surgeon knew that NorthShore had to comply with Medicare regulations and Medicare does not consider bypasses for 20% blockages as medically necessary. Am. Compl. ¶¶ 17, 27. Therefore, to get Medicare to pay for the bypasses, which it did, Walner alleges that the Defendants falsely recorded 70% blockages. Am. Compl. ¶ 27. Typically, FCA claims fail because the plaintiff can only point to a fraudulent scheme and are unable to present evidence at an individualized transactional level. *See Fowler*, 496 F.3d at 741-42; *United States ex rel. Crews v. NCS Healthcare of Illinois, Inc.,* 460 F.3d 853, 856-57 (7th Cir. 2006). While that is not the case here because Walner points to himself as the individualized transaction, Walner's FCA claims still fail to state a claim under Rule 9(b) because his Third Amended Complaint fails to plead with particularity the "who, what, where, when, and how" of the circumstances surrounding the alleged fraud.

---

[4] As previously discussed, an amendment effective May 20, 2009, altered the language of 31 U.S.C. § 3729(a)(2) and re-designated it as § 3729(a)(1)(B). The former version imposed liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government." The amended version omitted the language regarding payment and approval and inserted a materiality requirement. Section 3729(a)(1)(b) now imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Because the language was so recently amended, no court in this circuit has yet determined whether the previous three-element test for § 3729(a)(2) should still apply to § 3729(a)(1)(B). Although the language about payment was omitted in favor of inserting the word "material," the amended statute goes on to define "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(a)(3)(b)(4). Despite the change of language, making a statement or record in order to influence payment is reflected in the first element, which requires the defendant to make a statement in order to receive payment. Therefore, at this time, the Court will still apply the pre-amendment three-element test for § 3729(a)(1)(B).

In his Third Amended Complaint, Walner identifies NorthShore and Votapka, as well as an angiogram physician, a hospital representative, and a hospital agent as being involved in the alleged fraud. Am. Compl. ¶¶ 9, 10, 27, 38. Walner, however, fails to differentiate among Northshore and the other individuals mentioned and fails to plead each Defendants role in the fraud, including but not limited to who submitted the false claim. *See Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 778 (7th Cir. 1994) ("[T]he complaint should inform each defendant of the nature of his alleged participation in the fraud.") (internal citations omitted); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal of complaint because it "lump[ed] all the defendants together and [did] not specify who was involved in what activity."); *Suburban Buick, Inc. v. Gargo*, No. 08 C 0370, 2009 WL 1543709 at *4 (N.D. Ill. May 29, 2009) (Gettleman, J.) ("The complaint should not lump multiple defendants together, but should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant.") (internal quotations and citations omitted). Walner's Third Amended Complaint also fails to describe what is included in the allegedly false claim that was submitted to Medicare.[5] Walner asserts that he does not have access

---

[5] Walner correctly points out that the requirements of Rule 9(b) can be relaxed when the plaintiff lacks access to all facts necessary to support his claim. *See Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998). Courts in this district, however, have found that a relaxed pleading standard for a *qui tam* relator cannot be reconciled with the fact that a *qui tam* relator is stepping into the shoes of the government. *See United States v. Thorek Hosp. & Medical Center*, No. 04 C 8034, 2007 WL 2484333, *8 (N.D. Ill. Aug. 29, 2007) (Andersen, J.) ("The *qui tam* relator must meet the normal standard of particularity required by Rule 9(b)."); *United States v. Ortho-McNeil Pharmaceuticals*, No. 03 C 8239, 2007 WL 2091185, *4 (N.D. Ill. July 20, 2007) (Kendall, J.) ("If a relator cannot plead with particularity alleged violations of the FCA, he stands in no better position to assist the Government than any other citizen."). Other courts have gone on to find that because a Medicare claim is submitted to the government, it is not within the defendant's exclusive possession and does not warrant a relaxed Rule 9(b) pleading standard. *See Bantsolas ex rel. United States v. Superior Air and Ground Ambulance Transport, Inc.*, No. 01 C 6168, 2004 WL 609793 at *4 (N.D. Ill. Mar. 22, 2004) (Coar, J.). In fact, courts that have relaxed Rule 9(b)'s pleading standard typically do so when the plaintiff is alleging a wider fraudulent scheme in which he or she had no role and thus has no knowledge of any specific facts. *See United States ex rel. Kennedy v. Aventis Pharmaceuticals*, 512 F. Supp. 2d 1158, 1167 (N.D. Ill. 2007); *Peterson v. Comm. Gen. Hosp.*, No. 01 C 50356, 2003 WL 262515, * 2 (N.D. Ill. Feb. 7, 2003) (Reinhard, J.). That is not the case here. Walner is a *qui tam* relator. Because he points only to himself as evidence of the fraud, he is in no position to claim that specific facts regarding his own patient care and Medicare payment are inaccessible to him. Furthermore, his receipt of payment from Medicare demonstrates that the false claim is not within the sole possession of NorthShore. Therefore, this Court declines to relax Rule 9(b)'s

to the Medicare claim and therefore cannot provide the Court with this information. But, at the very least, Walner does have a record of the Medicare payment because it was sent to him. Am. Compl. ¶ 30. Therefore, Walner should at least be able to plead, with particularity, the facts contained in Medicare's record of payment. Walner's Third Amended Complaint also fails to specify where and when the allegedly false claim was made. Walner himself received the two bypasses, and yet he fails to plead the specific date of the surgery and even the specific NorthShore hospital at which it was performed. Walner's Third Amended Comlaint does not even identify the dates included in record of Medicare payment that Walner admits he received. Finally, Walner's Amended Complaint fails to plead with particularity the "how" of the fraud. Walner alleges that the Defendants participated in a conspiracy to present false statements and claims to Medicare in order to receive payment. But again, Walner fails to plead who agreed with whom, how they agreed, how they decided to file a false claim, who made the alleged misrepresentation, who filed the allegedly false claim, the method by which it was filed, and how much the payment was for. *See e.g., DiLeo*, 901 F.2d at 627 (stating that Rule 9(b) "particularity" means "the who, what, when, where, and how: the first paragraph of any newspaper story"); *see also United States ex rel. Grant v. Thorek Hosp.*, No. 04 C 8034, 2007 WL 1883454 at *3 (N.D. Ill. April 25, 2008) (Andersen, J.) (dismissing *qui tam* claim under FCA where complaint did not include any details regarding: "the date on which any claim was submitted . . . the content of any claim; the identification number of any claim; who submitted any false claim to the government; [and] what amount of reimbursement improperly was claimed from the government."); *Peterson v. Community General Hosp.*, No. 01 C 50356, 2003 WL 262515, at *2-3 (N.D. Ill. Feb. 7, 2003) ("[t]he whole point of a relator's case is that defendants

---

pleading requirements for his complaint.

8

submitted [fraudulent] Medicare claims . . . . But which patients? And which claims? And which claims or other documents show defendants falsely certified their compliance with federal law? These questions are absolutely essential to a relator's claim of fraud."). For the reasons stated, Walner's Third Amended Complaint fails to allege that the Defendants violated the FCA with the particularity required by Rule 9(b) and therefore Counts I, II and III are dismissed.

## II. Common Law Fraud Claim (Count IV)

Defendants also move this Court to dismiss Walner's common law fraud claim for failure to comply with the two-year statute of limitations set forth in 735 ILCS 5/13-212. Walner asserts that because he is bringing a common law fraud claim, it is subject to a five-year statute of limitations, not the two-year statute of limitations governing claims stemming from medical treatment. Walner further asserts that even if his common law fraud claim is subject to 735 ILCS 5/13-212's two year statute of limitations, his claim is still not time-barred under he brought it within two years of discovering his injury. Generally, complaints do not have to anticipate an affirmative defense to survive a Rule12(b)(6) motion to dismiss. *See United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). Courts can rely on the statute of limitations as grounds for a Rule 12(b)(6) dismissal only when the complaint plainly reveals that the action was not brought within the statutory period. *See United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). The question at this stage is whether there is any set of facts consistent with the allegations in the complaint that if proven would establish a defense to the statute of limitations. *See Clark v. City of Braidwood*, 318 F.3d 764, 767-68 (7th Cir. 2003); *Gypsum*, 350 F.3d at 628.

Here, although Walner's action is for fraud, it is subject to the statute of limitation set forth in 735 ILCS 5/13-212. 735 ILCS 5/13-212 provides that:

> [N]o action for damages . . . against any physician . . . or hospital . . . whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than two years after the date on which the claimant knew . . of the injury . . but in no event shall such action be brought more than four years after the date on which occurred the act . . . alleged in such action to have been the cause of such injury.

735 ILCS 5/13-212(a). Because Walner is bringing an action for damages against a physician and a hospital based on fraudulent conduct arising out of his patient care, Count IV is subject to the statute of limitations set forth in 735 ILCS 5/13-212. *See Orlak v. Loyola Univ. Health System*, 885 N.E.2d 999, 1006-07 (Ill. 2007) (acknowledging that "arising out of patient care" encompasses claims of fraud related to medical treatment); *see also Cangemi v. Advocate South Suburban Hosp.*, 845 N.E.2d 792, 812 (Ill. App. Ct. 1st Dist. 2006) ("The statutes of limitations in section 13-212 apply to any action against a hospital or physician arising out of patient care whether predicated on negligence or fraud.")' *Tobias v. Winkler*, 156 Ill. App. 3d 886, 891 (Ill App. Ct. 1987) (actions for informed consent arise out of patient care and therefore are governed by the statue of limitations set forth in 735 ILCS 5/13-212). As stated above, § 13-212 contains a two-year statute of limitations triggered by the plaintiff's discovery of the injury as well as a four-year period of repose triggered by the occurrence of the act causing the injury. *See Orlak*, 885 N.E.2d at 1003. Here, the alleged fraud occurred in January 2004. Am. Compl. ¶ 24. Even if Walner did not discover the alleged fraud until 2007, in order to comply with the four-year period of repose, Walner had to file his complaint by January 2008. But, Walner did not file his Complaint until May 8, 2008. Because

Walner failed to file suit within four years of the alleged fraud his claim for common law fraud is dismissed as time-barred.[6]

**III. Injunctive Relief Claim (Count V)**

Finally, Defendants move this Court to dismiss Count V of Walner's Third Amended Complaint for failure to plead the necessary elements of injunctive relief. In order to adequately state a claim for injunctive relief, a complaint must allege facts that support the following: 1) no adequate remedy at law exists; 2) the moving party will suffer irreparable harm absent injunctive relief; 3) the irreparable harm suffered absent injunctive relief outweighs the irreparable harm the respondent will suffer if the injunction is granted; 4) the moving party has a reasonable likelihood of prevailing on the merits; and 5) injunctive relief will not harm the public interest. *See Daniels v. Southfort*, 6 F.3d 482, 485 (7th Cir. 1993); *Davis v. Suran*, No. 98 C 656, 1998 WL 378420 at *4 (N.D. Ill. July 1, 1998) (Conlon, J.). Although a claim for injunctive relief is not subject to the heightened pleading standard required by Rule 9(b), a plaintiff still has an obligation to provide the grounds for a claim with more than labels and conclusions. *See Bell Atlantic Corp.*, 550 U.S. at 555-56. Yet in his Third Amended Complaint, Walner merely states that, "[p]laintiff is entitled, but not limited to, a temporary restraining order, preliminary injunction, and permanent injunction, all enjoining Defendants from the above alleged behavior." Am. Compl. ¶ 4 of Count V. Walner's Third Amended Complaint provides no facts supporting his claim for injunctive relief and instead

---

[6] The Court notes that 735 ILCS 5/13-215 does extend the four-year period of repose when the defendant fraudulently conceals the cause of action from the plaintiff's knowledge. Walner, however, pleaded in his Third Amended Complaint that he learned of the alleged fraud in middle to late 2007. Am. Compl. at ¶ 31. Even if Defendants were not forthcoming in giving Walner his angiogram films after that date, Walner cannot assert fraudulent concealment because he had already discovered the alleged fraud sometime in 2007, well within the four-year period of repose. *See Turner v. Nama*, 689 N.E.2d 303, 309 (Ill. App. Ct. 1997) (finding that subsequent concealment on defendant's part would still not merit application of the fraudulent concealment exception when plaintiff had discovered the alleged injury prior to any alleged concealment).

11

just concludes that injunctive relief is warranted. Because Walner's Amended Complaint fails to adequately state a claim for injunctive relief, Count V is dismissed.

## **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss Walner's Third Amended Complaint is granted. Counts I, II, III, and V are dismissed without prejudice. Count IV is dismissed with prejudice.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: September 18, 2009